# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-22-00196-PRW |
| | ) | |
| JAIME LOPEZ-SEGURA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court are Defendant's Motion to Dismiss the Indictment Under 8 U.S.C. § 1326(d) (Dkt. 22) and the United States' Response to Defendant's Motion to Dismiss (Dkt. 26). For the reasons stated below, the Court **DENIES** the motion.

### *Background*

After being removed from the United States in 2002, 2008, 2014, and 2016, Jaime Lopez-Segura, a citizen of Mexico, was discovered on or about April 30, 2022, within the Western District of Oklahoma. On May 17, 2022, Mr. Lopez-Segura was indicted on one count of illegal reentry after removal from the United States in violation of 8 U.S.C. § 1326(a).[1] More than twenty years after his first removal from the United States, Mr. Lopez-

---

[1] 8 U.S.C. § 1326(a) provides the following:

    (a) In general

    Subject to subsection (b), any alien who—

Segura now seeks to attack the 2001 removal order, which predicated his removal in 2002, on grounds that he received inadequate notice of his removal proceeding.

Mr. Lopez-Segura first entered the United States sometime prior to September 1990 and became a legal permanent resident on September 27, 1990. But in August 1999, he was charged and convicted of a crime in Chicago, Illinois, that initiated his removal from the United States. On February 10, 2000, Mr. Lopez-Segura was served with a Notice to Appear, which directed him to appear at a removal hearing at a date and time "to be set." The Notice to Appear described the consequences of failing to appear and instructed Mr. Lopez-Segura to provide a full mailing address and to "notify the Immigration Court immediately" upon a change of address. It also explained that "[n]otices of hearing" would be mailed to his address, that that if he did not provide an address at which he could be reached, then the United States "[would] not be required to provide [him] with written notice of [the] hearing." Furthermore, it explains that if he failed to attend the hearing, a removal order could be made in his absence.

---

(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

Mr. Lopez-Segura failed to attend his hearing, and on June 20, 2001, a removal order was issued *in absentia* that resulted in his removal from the United States on January 4, 2002. He was subsequently removed again on April 25, 2008, November 20, 2014, and April 9, 2016. Mr. Lopez-Segura's motion to dismiss argues that he did not receive notice of the June 2001 removal hearing and attacks his removal under 8 U.S.C. § 1326(d).

## *Discussion*

Section 1326 criminalizes reentry into the United States after removal without obtaining advance consent from the Attorney General.[2] To collaterally challenge a removal proceeding as a defense to a criminal prosecution for illegal reentry, an alien must establish each of § 1326(d)'s three requirements:

(1)    the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2)    the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3)    the entry of the order was fundamentally unfair.[3]

The prior removal proceeding is afforded a presumption of regularity, so the burden is on Mr. Lopez-Segura to demonstrate each of these three requirements.[4]

*A. Notice*

---

[2] 8 U.S.C. § 1326(a).

[3] 8 U.S.C. § 1326(d).

[4] *See United States v. Gonzalez-Fierro*, 949 F.3d 512, 521 (10th Cir. 2020); *United States v. Rivera-Nevarez*, 418 F.3d 1104, 1109 (10th Cir. 2005).

3

Mr. Lopez-Segura's first challenge is a due process argument, claiming he was afforded neither adequate notice nor an opportunity to be heard. According to Mr. Lopez-Segura, he was ordered removed at a hearing he did not attend because he had no notice. The February 2000 Notice to Appear, he argues, was defective because it did not contain the date and time of the removal hearing. The Court agrees. By statute, a notice to appear must include the date and time of the removal hearing.[5] Mr. Lopez-Segura's document did not tell him the date or time of his removal proceeding, so the immigration court later sent him a notice of hearing with this information.[6] Section 1229(a) says that "written notice (in this section referred to as a 'notice to appear') shall be given ... specifying" information that includes "[t]he time ... at which the proceedings will be held."[7] "The Supreme Court has held that this statutory language defines a notice to appear as a document that includes the time of the removal hearing. So a document omitting the time of the hearing is not considered a notice to appear."[8] Although Mr. Lopez-Segura received the subsequent notice of hearing that contained the date and time of his June 2001 removal proceeding,

---

[5] 8 U.S.C. § 1229(a)(1)(G)(i). *See Pereira v. Sessions*, 138 S. Ct. 2105 (2018); *Banuelos v. Barr*, 953 F.3d 1176, 1178 (10th Cir. 2020), *cert. denied sub nom. Garland v. Banuelos-Galviz*, 141 S. Ct. 2593 (2021).

[6] The removal order states that after Mr. Lopez-Segura received the Notice to Appear, "a notice of the scheduled hearing was sent to the respondent at the last address provided" and that "[t]he Notice to Appear and hearing notice(s) were each admitted as exhibits" during the proceeding. (Dkt. 26, Ex. 3).

[7] 8 U.S.C. § 1229(a)(1).

[8] *Banuelos*, 953 F.3d at 1180 (concluding that an incomplete notice to appear and a later notice of hearing could not satisfy § 1229(a)'s requirements) (citing *Pereira*, 138 S. Ct. at 2116–17).

that separate document—even when combined with the Notice to Appear—did not satisfy the requirements of § 1229(a).[9]

Although the Court concludes the Notice to Appear was defective, Mr. Lopez-Segura has nevertheless failed to meet the three requirements of § 1326(d).

### B. Exhaustion of Available Administrative Remedies

Mr. Lopez-Segura argues that because he was unaware of the date and time of the removal hearing and issuance of the subsequent removal order, he could not exhaust his administrative remedies as they were not genuinely available to him. Specifically, Mr. Lopez-Segura focuses on whether he waived his right to petition for review or to appeal. But as the United States argues, Mr. Lopez-Segura's argument misses the mark because he failed to exhaust those administrative remedies that were clearly available to him.

---

[9] *See Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021) (interpreting "the phrase 'a notice to appear' to require a single notice—rather than 2 or 20 documents"); *Banuelos*, 953 F.3d at 1180–1184 ("[The defendant] was served with a document that did not specify either the date or time of the hearing. But the government argues that the combination of the incomplete notice to appear and a later notice of hearing could satisfy § 1229(a) and trigger the stop-time rule. We disagree. . . . [T]he Supreme Court [held] . . . in *Pereira v. Sessions*[] that the phrase 'notice to appear' defines a single document that contains all of the required information."); *Guadalupe v. Att'y Gen. United States*, 951 F.3d 161, 167 (3d Cir. 2020), *cert. denied sub nom. Garland v. Guadalupe*, 141 S. Ct. 2792 (2021) ("We conclude that, for purposes of the stop-time rule, a deficient [Notice to Appear] cannot be supplemented with a subsequent notice that does not meet the requirements of 8 U.S.C. § 1229(a)(1)."); *Lopez v. Barr*, 925 F.3d 396, 405 (9th Cir. 2019), *on reh'g en banc sub nom. Lopez v. Garland*, 998 F.3d 851 (9th Cir. 2021) ("We hold that a Notice to Appear that is defective under *Pereira* cannot be cured by a subsequent Notice of Hearing. The law does not permit multiple documents to collectively satisfy the requirements of a Notice to Appear.").

A motion to reopen is an "available" administrative remedy for purposes of § 1326(d).[10] Ordinarily, an alien must file a motion to reopen within ninety days of the date of entry of a final administrative order of removal.[11] But when an underlying removal order is entered *in absentia*, as is the case here, an alien may move to reopen that removal order "at any time."[12] Mr. Lopez-Segura could have made a motion to reopen at any time after he became aware of the June 20, 2001, removal order. He was certainly aware of the removal order by January 4, 2002, the date he was first removed from the United States. In the twenty years since that date, however, Mr. Lopez-Segura never filed a motion to reopen.[13] Therefore, the Court concludes that Mr. Lopez-Segura has not carried his burden with respect to the exhaustion of available administrative remedies.[14]

## C. Denial of Judicial Review

If Mr. Lopez-Segura could satisfy the administrative-exhaustion requirement, he would still need to demonstrate that "the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review."[15] Mr. Lopez-

---

[10] *United States v. Hernandez-Perdomo*, 948 F.3d 807, 811 (7th Cir. 2020).

[11] 8 U.S.C. § 1229a(c)(7)(C).

[12] 8 U.S.C § 1229a(b)(5)(C)(ii).

[13] *See United States v. Alegria-Saldana*, 750 F.3d 638, 641 (7th Cir. 2014) ("[A]liens are presumed capable of researching generally available remedies.").

[14] *See United States v. Calan-Montiel*, 4 F.4th 496, 498 (7th Cir. 2021) ("He could have asked the agency to reopen the proceedings, see 8 U.S.C. § 1229a(b)(5)(C)(ii), but did not. He could have made that request even after being returned to Mexico. He could have sought judicial review before or after his removal. But he did not do that either. Instead he returned by stealth. That strategy makes it impossible to satisfy § 1326(d), even if the agency erred in failing to send a proper notice of the hearing's date.").

[15] 8 U.S.C. 1326(d)(2).

Segura notes that, by statute, he had thirty days from the removal order's issuance to seek judicial review[16] and argues "it is impossible to challenge an order when its existence is unknown." (Dkt. 22, at 6). Therefore, he concludes, he was denied judicial review of the removal order. But this argument fails for the same reason that Mr. Lopez-Segura cannot show he exhausted available administrative remedies; he knew of the removal order's existence by at least January 4, 2002, the date he was removed from the United States. Therefore, despite missing the thirty-day window, Mr. Lopez-Segura could have "moved to reopen his removal case, appealed to the BIA, and eventually gained review by an Article III court. At each stage of the process, he could have argued that the [Notice to Appear] was defective . . . ."[17] Mr. Lopez-Segura has thus not demonstrated that he was denied judicial review.

### D. Fundamental Unfairness

Even if Mr. Lopez-Segura had met § 1326(d)'s first two requirements, he must still show that "the entry of the order was fundamentally unfair."[18] To demonstrate fundamental unfairness, Mr. Lopez-Segura must establish a reasonable likelihood that, but for the

---

[16] *See* 8 U.S.C. § 1252(b)(1).

[17] *See United States v. Rangel-Rodriguez*, 367 F. Supp. 3d 836, 843–46 (N.D. Ill. 2019); *see also United States v. Hernandez-Perdomo*, 948 F.3d 807, 812 (7th Cir. 2020) ("Likewise, if [the defendants] had filed motions to reopen, they could have obtained judicial review of the denial of those motions or of the final removal orders entered after a proper hearing. They were thus not 'improperly deprived' of judicial review, 8 U.S.C. § 1326(d)(2), they just never sought it.").

[18] 8 U.S.C. 1326(d)(3).

complained-of error, he would have avoided removal.[19] He argues that relief would have

been possible under 8 U.S.C. § 1229b, which provides that the Attorney General "*may*

cancel removal" if the alien

(1)     has been an alien lawfully admitted for permanent residence for not less
        than 5 years,

(2)     has resided in the United States continuously for 7 years after having been
        admitted in any status, and

(3)     has not been convicted of any aggravated felony.[20]

Mr. Lopez-Segura contends that his violation of Illinois law—a concealed-carry

statute—was not an aggravated felony as determined under 8 U.S.C. § 1101(a)(43). But

even if Mr. Lopez-Segura were *eligible* for removal cancellation under § 1229b, he has not

argued why there exists a reasonable likelihood that the Attorney General would have in

fact cancelled the removal order. Without reasons for why the Attorney General would

have exercised a discretionary cancellation in this case, the Court concludes that Mr.

Lopez-Segura has not carried his burden to "establish a reasonable likelihood that, but for

the complained-of error, he would have avoided removal."[21]

### *Conclusion*

---

[19] *See United States v. Almanza-Vigil*, 912 F.3d 1310, 1323 (10th Cir. 2019) (citing *United States v. Aguirre-Tello*, 353 F.3d 1199, 1208 (10th Cir. 2004)).

[20] 8 U.S.C. § 1229b(a) (emphasis added).

[21] *Almanza-Vigil*, 912 F.3d at 1323.

The Court concludes that Mr. Lopez-Segura has not established § 1326(d)'s requirements of exhaustion of available administrative remedies, denial of judicial review, and fundamental unfairness. Accordingly, Mr. Lopez-Segura's motion is **DENIED**.

**IT IS SO ORDERED** this 7th day of September 2022.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE